IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KELSEY DAOUST**, on behalf of herself
and those similarly-situated,

      Plaintiff,                    Case No.

v.                              **JURY DEMAND**

**MARU RESTAURANT, LLC, MARU DETROIT, LLC**,
**MARU EAST LANSING, LLC**, **MARU GRAND**
**RAPIDS, LLC,** MARU **KALAMAZOO, LLC,**
**MARU MIDLAND, LLC** and **MARU HOSPITALITY, LLC**,
Domestic Limited Liability Companies, and
**ROBERT SONG**, Individually,

      Defendants.

_____/

Michael N. Hanna, Esq.
MI Bar No. P814162
Andrew R. Frisch, Esq.
Fla. Bar No. 27777
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3015
Email: mhanna@forthepeople.com
Email: afrisch@forthepeople.com
*Attorneys for Plaintiff*

---

## CLASS/COLLECTIVE ACTION COMPLAINT

    Plaintiff, **KELSEY DAOUST**, bring this action on behalf of herself and other current and former similary-situated tipped server employees and files this Class and Collective Action Complaint against Defendants, **MARU RESTAURANT, LLC, MARU DETROIT, LLC**, **MARU EAST LANSING, LLC, MARU GRAND RAPIDS, LLC, MARU KALAMAZOO, LLC**, **MARU MIDLAND, LLC** and **MARU HOSPITALITY, LLC** (hereinafter collectively

1

referred to as "Maru"), all Domestic Limited Liability Companies, and their collective owner, **ROBERT SONG**, individually ("**Song**") and state:

## INTRODUCTION

1.     Congress designed the FLSA to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.  29 U.S.C. §§ 206, 207.  These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.  *See Billingsley v. Citi Trends, Inc.*, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

2.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed.R.Civ.P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411, *et seq.,* ("WOWA").

3.     Defendants own and operate the Maru Restaurants, which are located in Detroit, Kalamazoo, Midland, East Lansing, Okemos, and Grand Rapids Michigan.

4.     Defendants employed Plaintiff and other similarly situated tipped employees but failed to pay them the appropriate minimum wages and overtime pay under FLSA and WOWA.

5.     Defendants have a policy whereby they pay their servers and/or tipped employees at all Maru Restaurants sub-minimum wages for each week/hour that they work, and under which they fail to pay their servers the full and proper overtime wages due to them for each overtime hour worked.

2

6.      These violations stem in part from the illegal practice whereby Defendants purports to take the "tip credit" with regard to all servers and tipped employees at all Maru Restaurants, despite the fact that they are not entitled to do so because they require all servers to participate in an illegal tip pool, whereby servers are required to share tips with employees who do not customarily and regularly receive tips, and are not eligible to share in a tip pool.

7.      Prior to October 2016, Defendants referred to their illegal tip-sharing arrangement as a "tip pool."

8.      Thereafter, and at all times to date Defendants have utilized a virtually identical illegal tip share arrangement, with the only difference being that they now refer to the portion of tips which Defendants illegally retain and use to pay non-tipped employees as a "service charge."

9.      Since October 2016, Defendants have required all of their servers at all locations to agree that Defendants may retain approximately one-half of such servers' tips as a condition of continued employment, in violation of M.C.L. § 408.478.

10.     Likewise, Defendants are not entitled to take a tip credit with respect to their servers because they do not put their servers on adequate notice of their intent to utilize the tip credit.

11.     Nonetheless, Defendants pay each server, including Plaintiff, sub-minimum wages.

12.     Furthermore, Defendants fail to pay Plaintiff and their other servers their overtime wages at a rate at least equal to time and one-half their regular rate of pay.

13.     Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA and WOWA's minimum wage provision, as does their practice of siphoning away those tips to distribute to non-tip eligible employees.  *See* 29 U.S.C. §§ 203, 206.

14.     Plaintiff brings a collective action and class action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked at any Maru Restaurant at any time during the three year period before this Complaint was filed up to the present ("Class Members").  These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## PARTIES

15.     At all times material to this action, Plaintiff was, and continues to be, a resident of Michigan within the Eastern District of Michigan.

16.     Upon information and belief, Defendant, Maru Restaurant, LLC, is a Michigan limited liability company, with its registered office located in Okemos, Michigan.

17.     Upon information and belief, Defendant, Maru Detroit, LLC, is a Michigan limited liability company, with its registered office located in Detroit, Michigan.

18.     Upon information and belief, Defendant, Maru East Lansing, LLC, is a Michigan limited liability company, with its registered office located in East Lansing, Michigan.

19.     Upon information and belief, Defendant, Maru Grand Rapids, LLC, is a Michigan limited liability company, with its registered office located in Grand Rapids, Michigan.

20.     Upon information and belief, Defendant, Maru Kalamazoo, LLC, is a Michigan limited liability company, with its registered office located in Kalamazoo, Michigan.

21.     Upon information and belief, Defendant, Maru Midland, LLC, is a Michigan

limited liability company, with its registered office located in Midland, Michigan.

22.     Upon information and belief, Defendant, Maru Hospitality, LLC, is a Michigan limited liability company, with its registered office located in Okemos, Michigan.

23.     Defendants' business operations are located in Detroit, Midland, East Lansing, Okemos, Grand Rapids and Kalamazoo, Michigan, and regularly conduct business in this jurisdiction.

24.     At all times material hereto, Defendants operated and continue to operate Restaurants located in in Detroit, Midland, East Lansing, Okemos, Grand Rapids and Kalamazoo, Michigan.

25.     Upon information and belief, at all times material hereto, Defendant, Robert Song was an individual resident of the State of Michigan who owned and operated the Maru Defendants, and who regularly held and/or exercised authority to:

> (a) hire and fire employees of Maru;

> (b) determine the work schedules for the employees of Maru; and

> (c) control the finances and operations of Maru.

26.     Defendant, Robert Song is the owner of the Maru Defendants.

27.     Defendant, Robert Song, was, and continues to be, the "employer" within the meaning of the FLSA.

28.     Plaintiff, Kelsey Daoust was employed by the Defendants from approximately April 2016 to June 2017 as a tipped employee and performed related waiter/server duties for Defendants in its restaurant located in Lansing, Michigan, and Detroit, Michigan.  Daoust's consent to file this action pursuant to 29 U.S.C. § 216(b) is filed as **Exhibit A** to this Complaint.

29.     Similarly, at various times throughout 2014 – date, several opt-in Plaintiffs who

the named Plaintiff expects will file their consents to join this case were tipped employees and performed related waiter/server duties for Defendants in the Maru locations in Detroit, Midland, East Lansing, Okemos, Grand Rapids and Kalamazoo, Michigan.

30.    At all times material to this action, Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

31.    At all times material to this action, Plaintiff was an "employee" of Defendants within the meaning of the FLSA.

32.    At all times material to this action, Defendants were Plaintiff's "employer" within the meaning of the FLSA.

33.    Defendants were, and continue to be, an "employer" within the meaning of the FLSA.

34.    At all times material to this action, Defendants were, and continue to be, an "enterprise engaged in commerce" and an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

35.    Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA by performing related duties.

36.    Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA by exercising unified operation or common control over Plaintiff and those similarly situated.

37.    Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA by operating for a common business purpose.

38.    Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendants shared interrelation of operations, which

include common offices, record keeping, telephone numbers, human resources department, payroll systems, accounting personnel, insurance providers, and equipment

39.     The Maru Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants share a common owner, Defendant, Robert Song.

40.     The Maru Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants share a common Operations Manager, John O'Meara.

41.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendant, Robert Song is the registered agent for all of the Maru Defendants.

42.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants utilize the same corporate address, located in 2110 Methodist St., Okemos, MI 48864.

43.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants share a common website, www.marurestaurant.com.

44.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants do business as "Maru."

45.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because all of the Maru Defendants utilize the same core menu.

46.     Defendants are a single employer and/or integrated enterprise and/or joint

7

employer for purposes of the FLSA because their employees of Maru, including Plaintiff Daoust, work/worked at multiple Maru locations.

47.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendants' "service charge" applied to all Maru Defendants' restaurants, located in Detroit, East Lansing, Kalamazoo, Midland, and Grand Rapids.

48.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendants share common management.

49.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendants maintain centralized control of labor relations and personnel.

50.     Defendants are a single employer and/or integrated enterprise and/or joint employer for purposes of the FLSA because Defendants share common ownership and financial control.

51.     Defendant, Robert Song is an employer as defined by 29 U.S.C §201, et seq., in that he acted, directly or indirectly, in the interests of the Maru Defendants towards Plaintiff and others similarly situated.

52.     Defendant, Robert Song, was, and continues to be, the "employer" within the meaning of FLSA.

53.     Based upon information and belief, the annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time periods.

54.     At all times material to this action, Defendants had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or

8

produced for commerce such as cash registers, telephones, plates, cups, liquor, knives, chairs, tables, which were used directly in furtherance of Defendants' commercial activity of running a restaurant.

55.     At all times material hereto, Plaintiff "engaged in commerce" and subject to individual coverage of the FLSA, by virtue of her regular and recurrent processing of credit card transactions with out-of-state banks, vendors and credit card companies, as part of her regular duties for Defendant.

56.     At all times material hereto, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

57.     At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendant.

## SUBJECT MATTER JURISDICTION AND VENUE

58.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

59.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

60.     This Court has jurisdiction over the Michigan Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Michigan Minimum Wage Claims.

61.     Venue is proper in the Eastern District of Michigan because Plaintiff resides in this District, and a substantial portion of the events forming the basis of this suit occurred in this District.

## FACTUAL ALLEGATIONS

62.     Plaintiff is an "employee" within the meaning of the FLSA and WOWA.

63.     On or about April 2016, Defendants hired Plaintiff, Kelsey Daoust, to work as a non-exempt server for Defendants' Company, a restaurant, at its location in Lansing, Michigan. Ms. Daoust was later transferred to Defendants' Detroit location on or about April 2017.

64.     Defendants compensated Plaintiff a base pay based upon the tipped minimum wage, rather than the Michigan Minimum wage, and therefore took a tip credit toward its minimum wage obligation for tipped employees.

65.     For the services they performed, Plaintiff received a reduced hourly rate (i.e. a rate less than the Michigan minimum wage).

66.     At all times relevant hereto Defendants required their tipped servers to share tips with "back of the house" kitchen staff who were non-tipped employees.

67.     At times prior to October 2016, Defendants maintained an illegal tip sharing arrangement whereby they required Plaintiff and all of their tipped servers to share their tips with certain non-tipped employees, who were ineligible to participate in a legal tip pool.

68.     In or about October 2016, and at all times to date, Defendants continue to require that Plaintiff and the other tipped employees supplement the income of the same non-tipped employees.

69.     Specifically, since in or about October 2016, Defendants have required all tipped servers, including Plaintiff, to permit Defendants to retain approximately half of the monies previously characterized as "tips," but that are now characterized as a "service charge."

70.     Defendants use the money retained from their servers in order to pay the same non-tipped employees, ineligible to participate in a tip share that they previously diverted a portion of all servers' tips to.

71.     At all times subsequent to October 2016, Defendants have demanded that all servers, including Plaintiff to permit Defendants to retain approximately one-half of the monies previously characterized a "tips," and have conditioned all servers' employment and/or continued employment on same.

72.     At all times subsequent to October 2016, all of Defendants' servers have received a reduced amount of tips from customers based in part upon the Defendants conversion of a portion of their "tips" to a so-called "service charge."

73.     At all times subsequent to October 2016, Defendants have added a "service charge" to all bills and requiring all servers to give all patrons of the restaurant a card, attached as **Exhibit B**, which read as follows:

> Thank you for joining us at Maru! We believe that hospitality is a team sport and it takes an entire team to provide you with the quality of service you expect from us.  Some of our co-workers (our chefs, hosts and dishwashers to name a few) aren't able to share in our guests' generosity, even though their contributions are just as vital to your experience at Maru.  In order to share the love, we have instituted a 10% service charge – **so please tip 10% less than you normally would.**  This service charge will go toward all of our hard-working staff, including your server. . . .

74.     Defendants simply recharacterized a portion of their servers' tips as "service charges," continued to use a portion of such monies to pay Defendants' non-tipped employees, and continued to treat such monies as tips.

75.     At all times after Defendants recharacterized a portion of their servers' tips as "service charges," Defendants required its servers including the Plaintiff to agree that Defendants may retain a portion of their tips to pay non-tipped employees as a condition of their employment

and/or continued employment.

76.     Defendants failed to pay Plaintiff the applicable minimum wage for any of their hours/weeks worked.  Instead, Defendants purported to take the tip credit and paid Plaintiff sub-minimum wages for all hours/weeks worked.

77.     Defendants advised their customers to tip their tipped employees less in lieu of the "service charge," despite the fact that they purported to take a tip credit toward their minimum wage obligation and compensated their employees based upon the tipped minimum wage.

78.     At all times relevant hereto, Defendants compensated and continue to compensate all of its servers in the same manner in which Plaintiff was compensated, based in part on the "service charge," whereby Defendants impermissibly force the tipped employees to share their tips with employees of Defendants who do not customarily or regularly receive tips, as a condition of their employment and/or continued employment.

79.     At all times subsequent to October 2016, Defendants have added 10% to each customers bills which Defendants refer to as a "service charge."

80.     Defendants compensated the Plaintiff her gross portion of the service charge at the end of their shift.

81.     During the workweeks that the Plaintiff worked and was compensated at the tipped minimum wage, Defendants demanded customers to forgo some or all of the tips they may have intended on providing the tipped employees in lieu of the "service charge," which is then shared with employees who are not permitted to share in a tip pool.

82.     The payment of the "service charge" by Defendants' customers was made free from compulsion.

83.     For each "service charge" paid by its patrons, Defendants divided the "service charge" amongst employees otherwise not eligible to share in a "tip pool".

84.     At all times subsequent to October 2016, Defendants continued to use a portion of Plaintiff's tips to pay their non-tipped employees in a virtually identical manner as they had prior to October 2016, with the only difference being that Defendants' began to refer to the illegal kickbacks required of their servers as "service charges."

85.     Like all other servers employed by Defendants, Plaintiff received a portion of the "service charge" paid by Defendants' customers.

86.     As a result of the manner in which Defendants administers its tip pool for servers, throughout their employment, Plaintiff was required to share her tips with individuals who do not customarily receive tips from customers.

87.     All other similarly-situated employees of Defendants who were compensated based on the tip credit also were required to share their tips with individuals who do not customarily receive tips from customers.

88.     Despite the fact that Defendants purport to take the tip credit with respect to Plaintiff and its other server employees, it fails to adequately put them on notice of its intent to take the tip credit throughout times within the relevant time period.

89.     As a result of Defendants' policies, Defendants are/were not entitled to offset the tips Plaintiff received against the usual statutory minimum hourly wage rate, and not entitled to pay Plaintiff the lower hourly minimum wage that ordinarily applies to tipped employees.

90.     Defendants' failure to permit the Plaintiff and other similarly situated employees to retain all tips received, and/or improper tip sharing invalidates the "tip credit" for Plaintiff.

91.     Defendants was not entitled to take the tip credit with respect to its servers,

including Plaintiff, because it failed to put its servers, including Plaintiff, on notice of its intent to take the tip credit.

### COUNT ONE: VIOLATION OF 29 U.S.C. § 207

92.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

93.     Defendants' practice of failing to pay Plaintiff and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. *See* 29 U.S.C. § 207.

94.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiff.

### COUNT TWO: VIOLATION OF 29 U.S.C. § 206

95.     Plaintiff incorporates paragraphs 1 – 91 as if fully set forth herein.

96.     Defendants' practice of paying Plaintiff and Class Members a direct wage at the required minimum wage rate violates the FLSA.  *See* 29 U.S.C. § 206.

97.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

### COUNT THREE: FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF WOWA (M.C.L. § 408.414)

98.     Plaintiff incorporates paragraphs 1 – 91 as if fully set forth herein.

99.     The WOWA requires an employer to pay nonexempt employees at least the state minimum wage for all hours worked.

100.     At all relevant times, Defendants failed to pay the required minimum wages to nonexempt employees.

101.     Plaintiff and all similarly-situated servers are all nonexempt employees.

102.     Defendants' violations of the WOWA were knowing and willful.   Defendants knowingly failed to pay at least the state minimum wage, as a matter of company policy and in flagrant disregard of the WOWA.

103.     The WOWA, M.C.L. § 408.419, provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages, an equal additional amount as liquidated damages, and attorneys' fees.

104.     Plaintiff and those similarly situated employees are/were entitled to be paid at least the Michigan minimum wage for each hour/week worked during employment with Defendant.

105.     Plaintiff is also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties, and all tips that were taken.   Without repayment of such fees, Plaintiff will not have been paid minimum wage.

106.     Plaintiff, and those similarly situated employees, was not paid the proper minimum wage, as required by WOWA.

107.     As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, and those similarly situated employees, has been damaged in the loss of minimum wages for one or more weeks of work with Defendant.

108.     Plaintiff is entitled to an award of damages in an amount equal to the relevant Michigan Minimum Wage, and an equal amount as liquidated damages.

109.     Plaintiff is entitled to an award of reasonable attorneys' fees and costs, pursuant to the Workforce Opportunity Wage Act, Public Act 138 of 2014.

## COUNT FOUR: ILLEGAL KICKBACKS (M.C.L. §§ 408.477-478)

110.     Plaintiff incorporates paragraphs 1-91 as if fully set forth herein.

111.    Defendants knowingly and intentionally violated provisions of the Wages and

Fringe Benefits Act, M.C.L. § 408.471, *et seq*. as follows:

      A.    The tip-sharing scheme is neither voluntary nor a valid tip-sharing agreement, and violates M.C.L. § 408.477 in that:

           (1) The required cash payments represent a direct or indirect deduction from employees' wages for the benefit of the employers.  In essence, Defendants require Plaintiff and their other servers to pay a commission on their gross sales, with such monies then being used to pay wages of other employees of Defendants.
           (2)  Participation in the tip-share scheme(s) were/are a condition of employment and a requirement of continued employment with Defendants.  It was not an agreement entered into with the full, free and written consent of each employee.   It was not obtained without intimidation or fear of discharge for refusal to permit the deductions.

           (3) Defendants did not secure the written consent of employees for each deduction from their earnings.

      B.    The "tip-sharing" scheme was neither voluntary nor a tip-sharing agreement, and violates MCLA 408.478 in that it makes a demand for direct or indirect remuneration or consideration to the employer as a condition of employment or continuation of employment.

112.    Plaintiff estimates that during the year prior to the date of filing the instant action,

approximately 600 Servers in the State of Michigan have been and continue to be affected by

Defendant's tip-share scheme. Also, that during the last 10 years there are as many as 2000

individuals who may have worked for Defendants as Servers who have been subject to

Defendant's unlawful demands.

113.    Each Plaintiff and each similarly situated person has suffered damages reasonably

estimated to be an average of approximately $84 per daily work shift including liquidated

damages, but Defendants' records will provide information necessary to determine with

precision the total damages sustained.

114.    Plaintiff demands judgment in their favor in an amount which fairly compensates

her for each and every cash payment they were required to make under Defendants' "tip-share"

scheme, plus costs and attorney's fees assessable under the statute for Defendants' willful disregard of the law.

## COUNT FIVE: CONVERSION

115.    Plaintiff incorporates by reference as though fully set forth here, paragraphs 1–91.

116.    While employed by Defendants, Plaintiff received an hourly wage which was less than the state minimum wage, in anticipation she would also receive tips and gratuities from patrons sufficient to bring her wages above the state minimum wage.

117.    Defendants knowingly and intentionally imposed on Plaintiff, as a condition of employment and a condition of continued employment, a "tip-share" scheme in which Plaintiff was required to pay back to Defendants, directly or indirectly, at the end of each work shift an amount equal to an established percentage of Plaintiff's gross sales for that work shift.

118.    Defendants' acts regularly deprived Plaintiff of her rightful possession of a portion of her anticipated and actual earnings.

119.    Defendants' actions caused Plaintiff to be deprived of their rightful earnings in amounts reasonably believed to exceed $25,000.

WHEREFORE, Plaintiff demands judgment in their favor which fairly compensates her for each and every cash payment they were required to make under Defendants' "tip-share" scheme, plus costs and attorney's fees.

## COUNT SIX: UNJUST ENRICHMENT

120.    Plaintiff incorporates by reference as though fully set forth here, paragraphs 1–91.

121.    Defendants required Plaintiff to pay to other employees of Defendants cash in an amount equal to a certain established percentage of Plaintiff's daily gross sales.

122.   Plaintiff was required to make the above cash payment from her own earnings.

123.   Plaintiff's cash payments to other employees was a direct and/or indirect benefit to Defendants in that the required cash payments allowed Defendants to hire other employees at a reduced wage with the promise they would also receive daily cash payments from the Plaintiff Servers.

124.   Michigan statutes cited above and principles of equity affirm it is unfair for Defendants to receive a benefit from the work and earnings of Plaintiff and for Defendants to retain the benefit.

WHEREFORE, Plaintiff demands judgment in her favor in an amount that would fairly compensate her for each and every cash payment she were required to make under Defendants' "tip-share" scheme, plus costs and attorney's fees wrongfully sustained.

### COUNT SEVEN: BREACH OF CONTRACT

125.   Plaintiff incorporates by reference as though fully set forth here, paragraphs 1–91.

126.   Defendants hired Plaintiff as a server with the stated and/or implied agreement that she would be paid a wage plus tips and gratuities earned from patrons, and that Defendants would not hinder their ability to receive the tips and gratuities earned from patrons.

127.   Defendants breached that agreement with Plaintiff either: by imposing a "tip-share" scheme on Plaintiff after she was hired; by making intentional or negligent misrepresentations to Plaintiff when she was hired, which failed to inform Plaintiff they would be required to pay out cash in an amount equal to a fixed percentage of their daily gross sales; or, by intentionally or negligently misrepresenting to Plaintiff their participation in the "tip-share" scheme was "voluntary," and not a term and condition of employment or continued employment.

128.   In violation of their stated or implied agreement with Defendants, Plaintiff has

been required to make cash payments to the benefit of Defendants if they wished to retain their employment in Defendants' business establishments.

129. Defendants' actions caused Plaintiff to be deprived of their rightful earnings.

WHEREFORE, Plaintiff demands judgment in her favor which fairly compensates her for each and every cash payment they were required to make under Defendants' "tip-share" scheme.

## COLLECTIVE ACTION ALLEGATIONS

130. As part of their regular business practices, Defendants intentionally, willfully and repeatedly harmed Plaintiff and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis, as described above.

131. Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants also denied them full compensation at the federally mandated minimum wage rate.

132. Class Members perform or have performed the same or similar work as Plaintiff. In particular, Plaintiff and Class Members all worked as servers and other employees who were impermissibly compensated at the tipped minimum wage, and worked under the same conditions and subject to the same violations of the FLSA.

133. Many Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

134. Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

135. As such, Class Members are similar to Plaintiff in that they share substantially

similar job duties, compensation plan, and the denial of overtime and minimum wage.

136.   Defendants' failure to pay overtime compensation and weeks/hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

137.   The experiences of Plaintiff, with respect to her pay, are typical of the experiences of Class Members.

138.   The experiences of Plaintiff, with respect to her job duties, are typical of the experiences of Class Members.

139.   The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

140.   All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

141.   All Class Members, irrespective of their particular job requirements, are entitled to compensation for weeks/hours worked at the federally mandated minimum wage rate.

142.   Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula.  The claims of all Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

143.   The Plaintiff and the Class Members held the same job title: servers and those employees compensated at the tipped minimum wage.

144.   As such, the class of similarly situated Plaintiffs are properly defined as follows:

> **The Class Members are all of Defendants' current and former servers who worked at any of Defendants' Restaurant at any time during the three years before this Complaint was filed up to the present.**

20

## RULE 23 CLASS ACTION ALLEGATIONS

145.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on their own behalf and on behalf of:

**All current and former employees who worked for Defendants as servers at any time during the last three years in the State of Michigan.**

(Hereinafter referred to as the "Rule 23 Class").   Plaintiff reserves the right to amend this definition if necessary.

146.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.   Rule 23 Class members should be easy to identify from Defendants' payroll and employment records.

147.    There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited, whether Defendants failed to pay Rule 23 Class members the required state minimum wage for all time worked in a workweek.

148.    Plaintiff's claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systematic employment and payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

149.    Plaintiff will fully and adequately protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of wage and hour

claims.  Neither Plaintiff nor her counsel has interest that are contrary to, or conflicting with the interests of the Rule 23 Class.

150.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

151.   The case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case.

152.   Because the elements of a Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiffs whose suit meets the specified criteria to pursue his claim as a class action").

153.   Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this  case with respect to the Rule 23 Class as a whole, class certification pursuant to  Rule 23(b )(2) is also appropriate..

## **PRAYER**

155.    For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a.    An Order Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Counts I and II);

b.      Certification of this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

c.      An Order compelling Defendants to disclose the names and addresses of all collective action class members, and Rule 23 Class members, and permitting Plaintiff to send notice of this action all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their right by law to join and participate in this lawsuit;

d.      An Order designating Plaintiff as a representative of the FLSA collective action Class, the Rule 23 Class and undersigned counsel as Class counsel for the same;

e.      An Order declaring that Defendants violated the FLSA and WOWA and their regulations;

f.      An Order declaring Defendants' violations of the FLSA and WOWA were willful;

g.      An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and collective action class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h.      An Order awarding attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

i.      Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

j.      Overtime compensation for all hours worked over forty in a workweek at the

applicable time-and-a-half rate;

      k.      All unpaid wages at the FLSA mandated minimum wage rate;

      l.      All unpaid wage at the Michigan mandated minimum wage rate;

      m.      All misappropriated tips;

      n.      All misappropriated funds including those that were labeled as "service charge,"

fees or otherwise;

      o.      An equal amount of all owed wages and misappropriated funds and tips as

liquidated damages as allowed under the FLSA and WOWA;

      p.      Reasonable attorney's fees, costs and expenses of this action; and

      q.      Such other relief to which Plaintiff and Class Members may be entitled, at law or

in equity.

<u>**JURY DEMAND**</u>

Plaintiff and Class Members hereby demand trial by jury.

Dated: November 30, 2017

                           RESPECTFULLY SUBMITTED:

                           By: <u>*/s/ MICHAEL N. HANNA*____</u>
                           MICHAEL N. HANNA, Esq.
                           Michigan Bar No: P81462
                           Andrew R. Frisch, Esq.
                           Fla. Bar No. 27777
                           Morgan & Morgan, P.A.
                           600 N. Pine Island Rd.
                           Suite 400
                           Plantation, FL 33324
                           Telephone: (954) 318-0268
                           Facsimile: (954) 333-3515
                           Email: MHanna@forthepeople.com

                           *Attorneys for Plaintiff*