IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KELSEY DAOUST**, on behalf of herself
and those similarly-situated,

      Plaintiff,                    Case No. 17-cv-13879

v.                                  Terrence G. Berg

**MARU RESTAURANT, LLC, MARU
DETROIT, LLC**, **MARU EAST LANSING,
LLC**, **MARU GRAND RAPIDS, LLC, MARU
KALAMAZOO, LLC**, **MARU MIDLAND, LLC**
and **MARU HOSPITALITY, LLC**, Domestic
Limited Liability Companies, and
**ROBERT SONG**, Individually,

      Defendants.

_____/

Michael N. Hanna, Esq. (P81462)    Robert J. Muchnick, (P62369)
Andrew R. Frisch, Esq.            Sean F. Crotty (P64987)
Fla. Bar No. 27777               HONIGMAN MILLER
MORGAN & MORGAN, P.A.      SCHWARTZ & COHN, LLP
2000 Town Center              2290 First National Building
Suite 1900                    660 Woodward Avenue
Southfield, MI 48075          Detroit, MI 48226
Telephone: (313) 251-1399     Telephone: (313) 465-7000
Facsimile: (313) 739-1975      Facsimile: (313) 465-7337
Email: mhanna@forthepeople.com  Email:rmuchnick@honigman.com
Email: afrisch@forthepeople.com   Email: scrotty@honigman.com
*Attorneys for Plaintiff*            *Attorneys for Defendants*

_____

**PLAINTIFF'S *UNOPPOSED* MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, KELSEY DAOUST ("Representative Plaintiff", "Class Representative," or "Plaintiff"), on behalf of herself and the members of proposed settlement Class ("Class Members"), respectfully moves the Court to preliminarily approve the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") between Plaintiff and Defendants, MARU RESTAURANT, LLC, MARU DETROIT, LLC, MARU EAST LANSING, LLC, MARU GRAND RAPIDS, LLC, MARU MIDLAND, LLC, MARU HOSPITALITY, LLC, and ROBERT SONG ("Defendants") (collectively "the Parties"), pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216 ("FLSA").  In support of this motion, Plaintiff submits the Settlement Agreement and its exhibits, which consist of the following documents:

EXHIBIT A:  Settlement Agreement and Release;[1]

EXHIBIT B:  Class Notice of Settlement; and

EXHIBIT C:  Declaration of Andrew R. Frisch

## I.    <u>INTRODUCTION</u>

This lawsuit is a hybrid class and collective action asserting wage and hour claims under the Fair Labor Standards Act and Michigan law.  It concerns Defendants' use of a tip pool and, later, a service charge.  Plaintiff contends the tip pool and service charge were unlawful and should result in Defendants being unable to take a tip credit (i.e., paying the lower tipped minimum wage and taking a credit for tips received to make up for the difference with the regular minimum wage). Defendants denied Plaintiff's allegations.

---

[1] Capitalized terms used but not defined herein have the meanings set forth in the Settlement Agreement and Release.

The Parties have agreed to a $1,450,000 settlement covering approximately 375 class members.  The settlement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following extensive investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions.  The settlement was achieved during mediation with the assistance of the Honorable Steven Rhodes (Retired Chief Judge, U.S. Bankruptcy Court for the Eastern District of Michigan).  After subtracting for fees, administrative costs and the like, the average payment per class member is approximately $2,520.

Representative Plaintiff requests that the Court grant preliminary approval of the Settlement and direct the distribution of notice of the settlement to the Class. Following the Fairness Hearing, Representative Plaintiff will request that the Court grant final approval of the Settlement by entering the proposed Final Order and Judgment Entry.  The following schedule sets forth a proposed sequence for the Settlement:

• Within 14 calendar days after the Preliminary Approval Date:  Defendants will provide the Settlement Administrator, Simpluris, Inc., with the Class Data in an electronic format acceptable to the Settlement Administrator, and Defendants will confirm to Class Counsel when the information has been provided to the Settlement Administrator (*see* Exhibit A, ¶ 4.1);

• Within 15 calendar days of receiving the Class Members' information:  the Settlement Administrator will send a Notice of Settlement to each Class Member's most recent known address via First-Class United States mail.  *See* Exhibit A, ¶ 4.2. For any Notice of Settlement that is returned as undeliverable, the Settlement Administrator will perform a utility database search and re-mail the Notice of

Settlement to the new address obtained for the Class Member, if any, within 15 calendar days of the date that the Notices of Settlement were originally mailed. *See* Exhibit A, ¶ 4.4. If a re-mailed notice is then returned as undeliverable for a second time no later than fifteen (15) days' before the Final Fairness and Approval Hearing, the person to whom the notice is addressed shall not be a Participating Class Member. *See* Exhibit A, ¶ 4.4;

• No later than 30 calendar days after the original date of the Settlement Administrator's mailing of the Notice of Settlement or within 30 calendar days of the re-mailing the undeliverable Notices of Settlement:  Class Members' Requests for Exclusion must be postmarked (*see* Exhibit A, ¶ 5.1);

• Within 60 calendar days of mailing the Notice of Settlement (or within 60 calendar days of any re-mailing of an undeliverable Notice of Settlement):  Class Members must file any objections to the settlement in accordance with the Notice of Settlement (*see* Exhibit A, ¶ 6.1);

• On a date set by the Court:  The Court shall hold the Final Fairness and Approval Hearing, and upon final approval of the Settlement, the Court shall enter a Final Approval Order (*see* Exhibit A, ¶ 6.4);

• Within 14 calendar days of the entry of the Final Approval Order:  Counsel for the Parties will file a stipulated order of dismissal with prejudice (*see* Exhibit A, ¶ 6.5);

• 14 days after the Effective Date:[2] Defendants shall wire 20% of the Settlement Amount ($290,000), plus the Employer Taxes attributable to such payment, to the Escrow Account for distribution by the Settlement Administrator. Thereafter, during each of the eight subsequent calendar quarters, Defendants shall wire 10% of the Settlement Amount, plus the Employer Taxes attributable to the installment payments, to the Settlement Administrator for distribution (*see* Exhibit A, ¶ 8.1).

---

[2] As defined in the Settlement Agreement, the "Effective Date" means the entry of a stipulated order of dismissal after the Court grants final approval of the Settlement if no Objection to Settlement is filed.  If a timely Objection to Settlement is filed, the "Effective Date" of the Agreement shall be the later of: (a) the date on which the time for all appeals relating to Objections to Settlement and the Final Approval Order has expired; and (b) if an appeal, review or writ is sought, the date on which the highest reviewing court renders its decision denying any such appeal, review, writ and/or petition.  *See* Exhibit A, ¶ 1.5.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**.

### A. **The Action.**

On November 30, 2017, Representative Plaintiff, Kelsey Daoust, filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and a class action under the Michigan Workforce Opportunity Wage Act (WOWA), M.C.L. § 408.411, *et seq.,* and alleged that Defendants failed to pay Plaintiff and other similarly-situated employees their proper minimum wages and/or overtime wages earned (the "Litigation").   Specifically, Plaintiff alleged that the Defendants maintained an illegal "tip pool" whereby they required Plaintiff and other tipped employees—whom they purported to take a "tip credit" for (paying them the tipped minimum wage rather than the regular minimum wage)—to share tips with employees who do not customarily and regularly receive tips, and are not eligible to share in a tip pool. *See* D.E. 1.   Plaintiff alleged that Defendants' violations resulted in illegal conversion of Plaintiff's tips and Defendants' unjust enrichment. Additionally, Plaintiff asserted that Defendants failed to pay her, and other members of the class proper overtime premiums, as required by the FLSA and Michigan law, when they worked in excess of 40 hours in a workweek. *See id.*[3]

The tip pool practice at issue ended on October 24, 2016 (the "Tip Pool Time Period").   From October 25, 2016 through June 3, 2018, Defendants charged customers a "service charge."   Plaintiff alleged that the service charge constituted a continuation of the tip pool practice.   The service charge practice ended on June 3, 2018.

---

[3]   Plaintiff also asserted violations of Michigan's Wages and Fringe Benefits Act, M.C.L. § 408.471, *et seq*., and common law breach of contract.   *See* D.E. 1. However, the Court did not certify the Class pursuant to those claims. *See* D.E. 20, at 2.

Plaintiff brought this case as a "hybrid" class/collective action wage and hour case under the Fair Labor Standards Act ("FLSA") and parallel Michigan statutes, including under Michigan's Workforce Opportunity Wage Act ("WOWA").  Plaintiff and the members of the class (MI state-law claims) and collective (FLSA) actions (Plaintiff and class members collectively "Plaintiffs") were servers at Defendants' sushi restaurants ("Maru Restaurants") and participated in Defendants' allegedly illegal tip pools from November 30, 2014 to June 2018.

On January 16, 2018, Defendants filed their Answer to the Complaint disputing the material allegations both as to fact and law and denying any liability to Plaintiff or any member of the proposed Class and asserting several affirmative defenses. *See* D.E. 14.

On April 13, 2018, based upon a Stipulation between the parties, the Court entered an Order as to Partial Class Certification, Conditional Certification of Collective Action and Notice Procedures. *See* D.E. 20.  Further, and on July 17, 2018, the Court entered a Stipulated Order as to Stay of Proceedings in order for the Parties to engage in non-binding facilitative mediation in an attempt to settle the matter.  *See* D.E. 31.

## B. Negotiation of the Settlement.

Beginning in August 2018 and continuing into September 2018, the Parties engaged in extensive, arm's length settlement discussions in an attempt to reach an agreement to settle the Litigation and agreed to engage in non-binding facilitative mediation on September 7, 2018.  Prior to the mediation date, Defendants' counsel provided detailed spreadsheets—and back-up data—showing all hours worked by each Class Member at each of the Defendants' locations.  The spreadsheets also listed

the overtime hours that were recorded by each Class Member during the relevant period. Based upon this information, counsel for the Plaintiff prepared detailed damage calculations for all Class Members.   Plaintiff's counsel also conducted extensive informal discovery, which included interviews, review of documentation, and preparation of declarations for the class members concerning their claims.

On September 7, 2018, the Parties participated in the non-binding facilitative mediation at JAMS's[4] office located in Detroit, Michigan. The Mediation was conducted by Judge Steven Rhodes and was attended by counsel for the Parties, the Class Representative, and a representative of the Defendant corporations with full authority to settle the matter. Ultimately, based on extensive hours of mediation, the Parties reached an agreement at the mediation to settle the action on the terms set forth in this Settlement Agreement. *See generally*, Exhibit A.

## C. The Settlement Terms.

Under the settlement agreement, Defendants agree to create a common fund of up to $1,450,000.00, which includes damages payable to the class, attorneys' fees and costs, costs of administration, and a service award for the named-Plaintiff.   *See* Exhibit A, ¶¶ 1.18; 8.1-8.2.

The persons eligible for payments consist of Representative Plaintiff and members of the proposed settlement class. *See* Exhibit A, ¶ 1.1. The definition of the settlement class includes all current and former servers who worked for Maru Restaurant, LLC, Maru Detroit, LLC, Maru East Lansing, LLC, Maru Grand Rapids, LLC, Maru Midland, LLC and/or Maru Hospitality, LLC, at any time between November 30, 2014 and June 3, 2018.  *Id*., ¶¶ 1.1; 7.3.  Under the settlement, all

---

[4] JAMS is the largest private alternative dispute resolution provider in the world.

Participating Class Members (i.e., those who do not request to be excluded) will receive payments and will release all state and federal wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description.

The payments for which Participating Class Members are eligible have been calculated by the Parties such that: (a) for the Tip Pool Time Period, Participating Class Members will receive the full amount equal to the alleged unpaid wages for such period (i.e., the difference between the tipped minimum wage and the regular minimum wage, plus any overtime amounts), which amounts to approximately $500,000; and (b) for the period from November 30, 2014 through June 3, 2018, Participating Class Members will receive an additional amount to be distributed on a *pro rata* basis and based on the number of workweeks each person worked during such period, which amounts to approximately $450,000. *See* Exhibit A, ¶¶ 7.1-7.3. The aggregate amount received by each Participating Class Member will be treated as 50% wages and 50% liquidated damages.  Under the settlement, Participating Class Members will receive an amount more than 100% of their alleged unpaid wages claimed for the pre-October 2016 period.  The discount with respect to the period after the Tip Pool Time Period is in recognition that the pre-October 2016 claims are stronger on their merits than those that accrued after October 2016. *See id.*

### III.   THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED.

The proposed class settlement is subject to approval by the Court pursuant to

Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

A. **Preliminary Approval of the Settlement Under Rules 23(b) is Warranted.**

      **1. Certification of the Settlement Class is Appropriate.**

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.*, 497 F.3d at 626. The Class, consisting of approximately 377 members, is "so numerous that joinder of all members is impracticable." Common issues of law or fact are presented by the Class's claims under Michigan's WOWA including whether Class Members were entitled to be paid the regular minimum wage (as opposed to the tipped minimum wage) for all hours worked when they participated in a tip pool with other Maru employees who did not customarily receive tips, and/or whether the Class Members were paid proper overtime premiums for the hours that they worked over forty each week. Representative Plaintiff, Kelsey Daoust, is a member of the Class, and her claims for unpaid minimum wages, unpaid overtime wages, conversion, and unjust enrichment are typical of other Class

Members' claims. Daoust is an adequate representative of the Class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.*, 497 F.3d at 626. The unpaid minimum wage and overtime issues presented under the WOWA predominate over any individual questions. Class wide resolution of this controversy is superior to the alternative of litigating some 377 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *U.S. Parole Commission v. Geraghty*, 445 U.S. 338, 403 (1980) ("[t]he justifications that led to the development of the class action include the protection of the defendant from inconsistent obligations, the protection of interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims.").

### 2.  The Class Notice Satisfies Rule 23 and Due Process.

Rule 23(e) of the Federal Rules of Civil Procedure requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *See* Fed. R. Civ. P. 23(e)(1); *Bailey v. White*, 320 Fed. Appx. 364, 367

(6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id.* at 514 (emphasis in original); *see also DeJulius*, 429 F.3d at 944; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement.'" *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir.1993)). Furthermore, "[w]here names and addresses of known or potential class members are reasonably available, direct notice should be provided." *In re Automotive Parts Antitrust Litigation*, 2016 WL 9280050, at *3 (E.D. Mich. Nov. 28, 2016) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).

Here, the proposed Class Notice satisfies these requirements. *See* Exhibit B. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the Notices will be sent to the members of the class by first-class mail using the last known addresses as provided to the Settlement Administrator by Defendants and checked against the National Change of Address Database.  *See* Exhibit A, ¶ 4.2. Furthermore, the Settlement Administrator will perform a utility database search for the addresses of those Class Members who's Notices of Settlement are returned as undeliverable. *See* Exhibit A, ¶ 4.4.  If a re-mailed notice is then returned as undeliverable for a second time no later than fifteen (15) days' before the Final Fairness and Approval Hearing, the person to whom the notice is addressed shall not be a Participating Class Member.  *See* Exhibit A, ¶ 4.4.

### B. <u>Approval of the Settlement Under Rule 23(e) is Warranted</u>.

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007) ("we must consider—the federal policy favoring settlement of class actions."); *Vassalle v. Midland Funding,*

*LLC*, 2014 WL 5162380, at *6 (N.D. Ohio Oct. 14, 2014), aff'd sub nom. *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is axiomatic that the settlement of class-action litigation is favored."); *Griffin v. Flagstar Bancorp, Inc*., 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.,* 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co*., 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

**1.  The Seven-Factor Standard Is Satisfied.**

The Sixth Circuit uses seven factors to evaluate class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983).

As shown below and in the Declaration of Andrew Frisch (*see* Exhibit C), the seven-factor standard supports approval of the Settlement.

### i.      No Indicia of Fraud or Collusion Exists.

The Parties were all represented by experienced counsel.  The Parties' counsel have extensive experience litigating FLSA, including tip pool and unpaid overtime claims and other claims for unpaid hours worked. Further, the Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. *See* Exhibit A, ¶ 11.5.  As such, there is no indiciation of fraud or collusion.

### ii.     The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiff's claims. If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

### iii.    Investigation Was Sufficient to Allow the Parties to Act Intelligently.

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged, Plaintiff's Counsel

obtained investigation notes from Representative Plaintiff and other employees who are members of the proposed settlement class, obtained declarations from the class members, and spoke with a Defendants' former manager who confirmed the illegalities that are the subject of Plaintiff's claims.  Plaintiff's counsel thoroughly examined the records provided by Defendants' counsel, and the legal issues in the case were thoroughly researched by counsel for the Parties.  Thus, all of aspects of the dispute are well-understood by both sides.

### iv.    The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' respective positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants raise several defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### v.    Uncertainty of Recovery Supports Approval.

Plaintiff's range of possible recovery is also open to dispute based on her claims in regard to conversion, unjust enrichment, and violations of Michigan's Wages and Fringe Benefits Act. Even if Plaintiff succeeds on the merits of all of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  While it is true Plaintiff and the Class could recover more than the amounts they allege they are owed, if the Court were to ultimately award liquidated damages, under the terms of the settlement, each Plaintiff is receiving more

than 100% of their damages for the Tip Pool Time Period by virtue of the settlement.

### vi.   Experienced Counsels' Views Favor Approval.

The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Both Plaintiffs' and Defendants' counsel believe that the settlement is fair and reasonable, which weighs in favor of approving the settlement. *See* Frisch Declaration; *see also Worthington v. CDW Corp.,* 2006 U.S. Dist. LEXIS 32100 at *13 (S.D. Ohio May 22, 2006).  Courts are particularly likely to defer to the judgment of experienced trial counsel where, as here, significant discovery has been completed.  *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir.1983).

### 2.  The Settlement Distributions Are Fair, Reasonable and Adequate.

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999).  In the present case, the Settlement Agreement provides that Defendants' Settlement Payments, separately and independently from payments for attorneys' fees and costs, will be divided into individual payments for which participants in the settlement will be eligible. *See* Exhibit A, at 8-11, Sec. 7-8.   All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Class Members.  *See*

Exhibit A, ¶ C.  Here, because each Class Member is receiving an amount equal to their full unliquidated damages, for the pre-October 2016 claim period and a significant portion of their post-October 2016 damages, even after payment of attorneys' fees and costs, the settlement is fair and reasonable.  *See* Exhibit A, Sec. 7-8.

### i.     The Individual Payments are Reasonable and Adequate.

All individual payments were calculated by the Parties by taking into account all hours each Class Member worked in which they were required to participate in the tip pool and service charge, as well as all overtime hours recorded by Class Members in Defendants' timekeeping system during such periods.  *See* Exhibit A, ¶ 7.3.  The Participating Class members' payments are calculated on a *pro rata* basis, where the class members who were subjected to the tip pool arrangement received a higher amount in compensation based on the relative perceived strength of these claims in comparison to the service charge claims.  Inasmuch as the Defendants provided all data and information to ascertain these amounts, and the Defendants have agreed to reimburse all Class Members an amount that exceeds 100% of claimed wages for the Tip Pool Time Period, where the aggregate amount received by each Participating Class member is equally allocated as wages and liquidated damages, the settlement is fair, reasonable and adequate.

Moreover, because the settlement takes into account a period longer than the FLSA's two year default statute of limitations, it can be said to be even more

16

favorable than other similar settlements. The FLSA normally permits recovery of unpaid wages for only a two-year limitation period, with a third year of recovery available only upon proof of a willful violation. Here, while the Defendants dispute their liability and assert that their violations, if any, were non-willful, Class Members are receiving more than two years of unpaid wages in some instances. *See* Exhibit A, ¶ 7.3.

### ii. The Attorneys' Fees and Expenses to Plaintiff's Counsel are Proper and Reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Michigan's WOWA, which is interpreted in accordance with the FLSA,[5] also provides that the defendant is liable for "costs and reasonable attorney fees." M.C.L. § 408.419(1)(a).

In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers*

---

[5] *See Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470, 474 (6th Cir. 1987) (Michigan courts have often considered the interpretation given to federal statutes when interpreting analogous state statutes); *Arrington v. Michigan Bell Tel. Co.*, 746 F. Supp. 2d 854, 857 (E.D. Mich. 2010).

*Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, *in addition* to payments to be made to Plaintiff and Class Members, Defendants have agreed to pay the Plaintiffs' attorney fees and costs in the amount of $483,333.33. *See* Exhibit A, ¶ 7.2.[6]  Pursuant to § 216(b) of the FLSA, "[t]he court ... shall, in addition to any judgment awarded to the ... plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).   "The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees."   *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 501 (6th Cir.1984).

The Sixth Circuit has approved both the "lodestar" and common fund method of payment of attorney fees.  *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 517 (6th Cir.1993).   Here, in addition to the amounts payable to the Class,

---

[6] The Sixth Circuit has noted that "there is no requirement under the fee shifting statutes that an award of attorneys' fees be proportional to the amount of the underlying award of damages." *West v. Hess Environmental Services, Inc.*, 111 F.3d 132, at *2 (6th Cir. 1997) (table), quoting *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995); *see also Williams v. Hooah Sec. Services LLC,* 2012 WL 1022187 (W.D. Tenn. March 26, 2012) (awarding FLSA plaintiff's counsel $22,689 in attorney's fees and costs, where plaintiff received total damages of $18,202.96).

Plaintiffs' counsel will receive attorneys' fees/costs related to their representation of the Plaintiffs in this action. The attorneys' fees amount, as reflected in the Settlement Agreement, is less than 1/3 of the total Common Fund. The parties agreed at mediation that this is a reasonable fee under the circumstances of this case.

Consistent with Sixth Circuit authority, courts within the Sixth Circuit and throughout the country, have agreed that it is appropriate for class counsel to receive their attorneys' fees as a percentage of the common fund, when such fund is created due to their efforts. *See Rawlings v. Prudential-Bache Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.")[7]; *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in

---

[7] Consistent with this approach, courts throughout the Sixth Circuit have repeatedly held that 1/3 of a common fund is presumptively reasonable when a case is resolved with the creation of a common fund. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *Manners v. Am. Gen. Life Ins. Co*., 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999). Indeed, throughout the Sixth Circuit, attorneys' fees in class/collective actions have ranged from 20%–50%. *See, e.g., In re Cincinnati Microwave Inc. Sec. Litig.*, Consolidated Master File No. C–1–95–905, Order and Final Judgment (W.D. Ohio Mar. 21, 1997) (awarding 30%); *Adams v. Standard Knitting Mills, Inc*., [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. Jan. 6, 1978) (35.8% award).

similar FLSA collective actions") (collecting cases); *see also Stahl v. Mastec, Inc.*, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008)("attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund."), citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").

Here, the Parties agree that 33.3 % of the common fund is a reasonable percentage for attorneys' fees and costs. Plaintiffs' counsel has extensive experience litigating wage and hour class/collective actions and the results in this matter warrant such an amount, given Defendants' vigorous defense and the results obtained on behalf of Plaintiffs.

In addition to the aforementioned authority, case law from throughout the country supports the payment of attorneys' fees as a percentage of the total common fund. *See Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of $346,500 out of the common fund of $1,050,000 (33%)); *Duchesne v. Michael Cetta, Inc.,* 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second

Circuit); *Faltaous v. Johnson and Johnson, et. al.*, 2007 WL 3256833, at *10 (D.N.J. Nov. 5, 2007) ("attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. March 31, 2009) (awarding 33% of common fund of $3,265,000.00 as attorneys' fees); *Stahl,* 2008 WL 2267469, at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y May 28, 2009) (awarding attorneys' fees of 33 1/3% from common fund of $710,000.00); *Noell v. Suncruz Casinos*, 2009 WL 541329, at *1 (M.D. Fla. March 4, 2009); *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (M.D. Fla. August 20, 2008) (awarding 32.25% of the common fund as attorneys' fees); *Kimmel et al., v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV-WEJ, Docs. 69, 70 (N.D. Ga. Nov. 4, 2010) (approving common fund class settlement on behalf of class of construction superintendents).

"[O]ne purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation*, 4th § 14.121. As the Eleventh Circuit has recognized, "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model." *Norman v. The Housing*

*Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988).

Plaintiffs will address their request for attorneys' fees, and the factors necessary to evaluate in greater detail in their motion for final approval.

## IV.   CONCLUSION.

Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, preliminarily approve Class Counsel's request for attorneys' fees, and direct distribution of notice to the Class by entering a Preliminary Order approving the settlement.

DATED the 13th day of February 2019.

Respectfully Submitted,
By: s/ *Michael N. Hanna*
Michael N. Hanna, Esq. (P81462)
Andrew R. Frisch, Esq.
Fla. Bar No.  27777
MORGAN & MORGAN, P.A.
2000 Town Center
Suite 1900
Southfield, MI 48075
Telephone: (313) 251-1399
Facsimile:  (313) 739-1975
Email: mhanna@forthepeople.com
Email: afrisch@forthepeople.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFIY that on this 13th day of February 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ **MICHAEL N. HANNA***
Michael N. Hanna, Esquire