IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KELSEY DAOUST**, on behalf of herself
and those similarly-situated,

  Plaintiff,

v.

**MARU RESTAURANT, LLC, MARU
DETROIT, LLC**, **MARU EAST LANSING,
LLC**, **MARU GRAND RAPIDS, LLC, MARU
KALAMAZOO, LLC**, **MARU MIDLAND, LLC**
and **MARU HOSPITALITY, LLC**, Domestic
Limited Liability Companies, and
**ROBERT SONG**, Individually,

  Defendants.
_____/

Case No. 17-cv-13879

Hon. Terence Berg

# FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT

Based upon the facts presented to the Court during the June 19, 2019 Final Approval and Fairness Hearing, the Court's review of the Plaintiff's Memorandum of Law is Support of the Motion for Preliminary Approval, the Declaration of Andrew R. Frisch ("Frisch Declaration"), and all other papers submitted in connection with Plaintiff's Motion for Preliminary Approval, the Court grants final approval of the settlement memorialized in the Settlement Agreement and Release ("Settlement Agreement") between Plaintiff, KELSEY DAOUST, and Defendants

MARU RESTAURANT, LLC, MARU DETROIT, LLC, MARU EAST LANSING, LLC, MARU GRAND RAPIDS, LLC, MARU MIDLAND, LLC, MARU HOSPITALITY, LLC, and ROBERT SONG ("Defendants") (collectively "the Parties"), and "so orders" all of its terms except as set forth herein.

**Background**

This lawsuit is a hybrid class and collective action asserting wage and hour claims under the Fair Labor Standards Act ("FLSA") and Michigan's Workforce Opportunity Wage Act ("WOWA"), M.C.L. § 408.411, *et seq*. It concerns Defendants' use of a tip pool and, later, a service charge. Plaintiff contends the tip pool and service charge were unlawful and should result in Defendants being unable to take a tip credit (i.e., paying the lower tipped minimum wage and taking a credit for tips received to make up for the difference with the regular minimum wage). Defendants denied Plaintiff's allegations.

The Parties have agreed to a $1,450,000 settlement covering 359 class members. The settlement was reached during arms-length negotiations between the Parties, which were conducted by experienced counsel following extensive investigation, and on the basis of mutual recognition of the strengths and weaknesses of each other's positions. The settlement was achieved during mediation with the assistance of the Honorable Steven Rhodes (Retired Chief Judge, U.S. Bankruptcy Court for the Eastern District of Michigan). After

subtracting for fees, administrative costs and the like, the average payment per class member is approximately $2,585.

**Certification of the Settlement Class**

1. The Court finds that all requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure are satisfied for settlement purposes.

2. The Court finally certifies the following class under Fed.R.Civ.P. 23(e), for settlement purposes only ("Settlement Class"):

> All tipped server employees who worked for any of the Defendants from November 30, 2014 through June 3, 2018, with the exception of six (6) servers who did not receive the class notice after a remailing and who therefore are excluded from the class definition.

**Approval of the Settlement Agreement**

3. The Court hereby grants the Motion for Final Approval and approves the settlement on behalf of the class as set forth in the settlement Agreement and this Order under Federal Rule of Civil Procedure 23(e).

4. Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)).

*The Seven Factor Standard is Satisfied*

5. The Sixth Circuit uses the following seven factors to evaluate class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense

3

and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983).

6. These factors were thoroughly reviewed with Class Counsel during the June 19, 2019 Fairness Hearing. The Court finds that all of the factors set forth in *UAW*, 497 F.3d at 615, which provides the analytical framework for evaluating the fairness of a class action settlement, weigh in favor of final approval.

7. With respect to the first factor concerning the risk of fraud or collusion, the Parties were represented by experienced counsel. The Parties' counsel have extensive experience litigating wage and hour class and collective action lawsuits, including tip pool and unpaid overtime claims and other claims for unpaid hours worked. Further, the Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties. The settlement was reached after Class Counsel had conducted a thorough investigation of the facts and engaged in significant discovery, and after extensive negotiations. To help resolve the case, the parties enlisted the services of a retired Federal Judge, Judge Steven Rhodes, in facilitating the Parties' mediation, thereby reinforcing that the

Settlement Agreement is non-collusive. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). As such, there is no indication of fraud or collusion.

8. With respect to the second factor, the policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Plaintiff's claims. If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. Therefore, the second *UAW* factor weighs in favor of final approval.

9. With respect to the third factor, the Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged, Plaintiff's Counsel obtained investigation notes from Representative Plaintiff and other employees who are members of the proposed settlement class, obtained declarations from the class members, and spoke with a Defendants' former manager. Plaintiff's counsel thoroughly examined the records provided by Defendants' counsel, and the legal issues in the case were thoroughly

researched by counsel for the Parties. Thus, all of aspects of the dispute are well-understood by both sides, and the parties have completed enough discovery to recommend settlement.

10. With respect to the fourth factor, the risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses present risk. The settlement eliminates this uncertainty.

11. With respect to the fifth factor, class counsel and the class representative approve the settlement. The Parties' counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. As discussed during the Fairness hearing, both Plaintiffs' and Defendants' counsel believe that the settlement is fair and reasonable, which weighs in favor of approving the settlement. *See Worthington v. CDW Corp.,* 2006 U.S. Dist. LEXIS 32100 at *13 (S.D. Ohio May 22, 2006). Courts are particularly likely to defer to the judgment of experienced trial counsel where, as here, significant discovery has been completed. *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir.1983)

12. With respect to the sixth factor, the class' reaction to the settlement has been positive. No class member objected, and only one class member excluded herself from the settlement. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008); *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011).

13. With respect to the seventh factor, public interest favors settlement. The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007) ("we must consider— the federal policy favoring settlement of class actions."); *Vassalle v. Midland Funding LLC*, 2014 WL 5162380, at *6 (N.D. Ohio Oct. 14, 2014), aff'd sub nom. *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016) ("It is axiomatic that the settlement of class-action litigation is favored."); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.") Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001)

("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.,* 2007 WL 329162, at *5 (W.D. Mich. Jan. 31, 2007); *Robinson v. Ford Motor Co.,* 2005 WL 5253339, at *4 (S.D. Ohio June 15, 2005).

*The Settlement Agreement Is Updated to Reflect the Increased Settlement Administrator Costs*

14. The Parties have recalculated certain figures stated in the Settlement Agreement as a result of increased costs from the settlement administrator, which were $33,625 versus the $16,500 estimated in the Settlement Agreement. Accordingly, it is understood that the amount available for distribution to the class, as specified in Section 7.1 of the Settlement Agreement, is $928,041.69 instead of $945,166.67. The installment payment chart referenced in Section 8.2 of the Settlement Agreement is updated as follows:

| *Installment Payment* | *Paid to Class Counsel* | *Amount Remaining for Participating Class Members* |
|---|---|---|
| 1 ($290,000) | $96,666.66 | $154,708.34 |
| 2 ($145,000) | $48,333.33 | $96,666.67 |
| 3 ($145,000) | $48,333.33 | $96,666.67 |
| 4 ($145,000) | $48,333.33 | $96,666.67 |
| 5 ($145,000) | $48,333.33 | $96,666.67 |
| 6 ($145,000) | $48,333.33 | $96,666.67 |

| Installment Payment | Paid to Class Counsel | Amount Remaining for Participating Class Members |
|---|---|---|
| 7 ($145,000) | $48,333.33 | $96,666.67 |
| 8 ($145,000) | $48,333.33 | $96,666.67 |
| 9 ($145,000) | $48,333.36 | $96,666.66 |

**Approval of FLSA Settlement**

15. The Court hereby approves the FLSA settlement.

16. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Torres v. Gristede's Operating Corp.*, No. 04-CV 3316 PAC, 2010 WL 5507892 at *6 (S.D.N.Y. Dec. 21, 2010), *aff'd,* 519 F. App'x 1 (2d Cir. 2013).

17. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Clark v. Ecolab Inc.,* No. 04CIV.4488PAC, 2010 WL 1948198 at *7 (S.D.N.Y. May 11, 2010). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Torres,* 2010 WL 5507892, at *6 (internal quotation marks omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Clark,* 20I0 WL 1948198, at *7.

18. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation.

**Dissemination of Notice**

19. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to exclude themselves from the class, and to object to the settlement, and to appear at the fairness hearing conducted on June 19, 2019. *See* D.E. 33-3. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

**Award of Fee and Costs to Class Counsel and Award of Service Awards to Class Representative**

20. On April 13, 2018, the Court appointed Morgan & Morgan, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). *See* D.E. 20.

21. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the Class Members' claims.

22. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law. ECF No. 33-4; *see also Pierre-Val v. Buccaneers Ltd. P'Ship*, 2015 WL 3776918, at *4 (M.D. Fla. June 17, 2015) (appointing Frisch and Morgan & Morgan as class counsel in Florida minimum wage class action); *Seghroughni v. Advantus Restaurant, Inc.*, 2015 WL 390329, at *2 (M.D. Fla. Jan. 28, 2015) (same); *Deleon v. Wells Fargo, N.A.,* 1:12-cv 04494-RLE, D.E. 39 (S.D.N.Y. Jan. 12, 2015) (appointing Frisch and M&M as class counsel in NYLL class action); *Reyes v. AT&T Mobility Services, LLC,* 1:10-cv-20837-MGC, D.E. 191 (S.D. Fla. Dec. 20, 2012) (appointing Frisch as class counsel); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. August 6, 2012) ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well versed in wage and hour law and in class action law."); *Aponte v. Comprehensive Health Management, Inc.*, 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011) (finding that Frisch and Morgan & Morgan "are qualified, experienced, and capable of acting as lead counsel" in wage and hour class actions).

23. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources to prosecuting

11

this case.

24. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $483,333.33 in attorneys' fees and costs, or one-third of the fund (including any interest in the fund).

25. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation."); *See also In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions") (collecting cases).

26. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank v. Eastman Kodak Co.,* 228 F.R.D.

174, 189 (W.D.N.Y. 2005). Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *See Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and Michigan's WOWA.

27. Class Counsel's request for one-third of the fund to cover their fees and costs is reasonable and consistent within the norms of class litigation in this circuit.

28. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.

29. All of the factors in *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), weigh in favor of a fee award of one-third of the fund.

30. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.

*Clark,* 2010 WL 1948198, at *9.

31. The awarded attorneys' fees and reimbursed costs shall be paid from the settlement fund.

32. The Court finds the service award of $5,000.00 to named-Plaintiff, Kelsey Daoust, to be reasonable as well. This amount shall be paid from the settlement fund.

33. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Sewell v. Bovis Lend Lease, Inc.,* No. 09 CIV. 6548 RLE, 2012 WL 1320124 at * 14 - 15 (S.D.N.Y. Apr. 16, 2012); *Reyes v. Altamarea Grp., LLC,* No. 10-CV-6451 RLE, 2011 WL 4599822 at *9 (S.D.N.Y. Aug. 16, 2011); *Willix,* 2011 WL 754862, at *7.

34. Here, the service award recognizes the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,* No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

**Retention of Jurisdiction to Enforce**

35. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED.

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: July 3, 2019